UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leo H. Vergote,

      Plaintiff,

v.                               Honorable Sean F. Cox

David R. Dawson *et al.,*          Case No. 07-14218

      Defendants.

_____/

**OPINION & ORDER**

      In this action, which arises out of a dispute over attorney fees, Plaintiff asserts claims for breach of contract, unjust enrichment, and tortious interference with contractual relationship. The matter is currently before the Court on cross-motions for summary judgment. The parties have briefed the issues and oral argument was heard on January 8, 2009. For the reasons below, the Court shall: 1) DENY Plaintiff's motion seeking summary judgment in its favor; and 2) GRANT IN PART, AND DENY IN PART, Defendants' Motion to Dismiss/Motion for Summary Judgment.

BACKGROUND

A.    <u>Procedural History</u>:

      On October 3, 2007, Plaintiff Leo H. Vergote ("Plaintiff" or "Vergote") filed this action against Defendants David R. Dawson ("Dawson") and Boyer & Dawson, P.C. ("Boyer & Dawson")(collectively, "Defendants"). Plaintiff's complaint asserts the following claims against Defendants: "Breach of Contract" (Count I); "Unjust Enrichment" (Count II); and "Tortious

1

Interference with Contractual Relationships" (Count III).

Plaintiff filed the action in federal court based exclusively on diversity jurisdiction. (Compl. at ¶ 5).

Under this Court's January 9, 2008 Scheduling Order, discovery was to close on April 21, 2008, motions were to be filed by May 19, 2008, and the action was scheduled for trial during the months of November/December, 2008.  (Docket Entry No. 16).

Plaintiff filed a Motion for Summary Judgment on February 14, 2008.  (Docket Entry No. 17).  On March 7, 2008, Defendants filed a Motion to Dismiss Pursuant to 28 U.S.C. § 1332, asserting that this Court lacks subject matter jurisdiction over this action.  (Docket Entry No. 20).  On July 22, 2008, the Court granted Defendants' Motion to Dismiss, after concluding that Plaintiff had "not met his burden to establish diversity of citizenship" and that this Court could therefore not exercise subject matter jurisdiction over the action.  (Docket Entry No. 37).  The Opinion & Order stated that the issue before the Court, with respect to diversity jurisdiction, is whether Plaintiff was a citizen of Missouri when he filed the Complaint in this action."  (*Id.* at 3).  It further stated that "[a]t the hearing in this case, the Court informed Plaintiff that if he intended to remain in Missouri at the time he filed the action, he should submit an affidavit to that effect," but that Plaintiff had failed to do so.  (*Id.* at 4).

On July 29, 2008, Plaintiff filed a motion seeking reconsideration of the Court's July 22, 2008 Opinion & Order.  (Docket Entry No. 38).  In support of his motion, Plaintiff filed an affidavit that stated, in pertinent part:

    1.     I am the Plaintiff in this lawsuit . . .
    2.     Since prior to October 3, 2007, I have resided in the State of Missouri and, specifically, at 1710 N. Gregory Drive, Nixa, MO 65714.  During this time period, I have spent over 90% of my time within the State of

2:07-cv-14218-SFC-DAS   Doc # 53   Filed 01/13/09   Pg 3 of 20   Pg ID 864

Missouri.

3.    Since prior to October 3, 2007, I have intended to remain in Missouri and keep my principal residence in that state.

4.    Since establishing my residence in Missouri, I have obtained a Missouri state identification card.  I have apparently maintained a drivers license in Michigan solely because I neglected to notify Michigan that I have moved.

5.    At no time within the past two years has my attorney been authorized to indicate in any pleadings filed in any court that I am a resident of the State of Michigan.  To that extent that an attorney may have indicated in a pleading that I was a resident of Michigan during this time period, such a statement was incorrect and made without my authority or knowledge.

(Pl.'s Affidavit, Docket Entry No. 38-3).

On August 1, 2008, the Court granted Plaintiff's Motion for Reconsideration and reopened the case:

This matter is before the Court on Plaintiff's Motion for Reconsideration of this Court's July 22, 2008 Opinion and Order. [Doc. 37].  The Court having reviewed Plaintiff's Motion and accompanying affidavit finds that Plaintiff has alleged sufficient facts to establish diversity subject matter jurisdiction.

Accordingly, Plaintiffs' Motion for Reconsideration is GRANTED and the case will proceed.  The scheduling order entered January 9, 2008 will remain in effect.  The parties may resubmit briefing on the substantives issues of their motions to dismiss and/or for summary judgment.

IT IS SO ORDERED.

(Docket Entry No. 39).

On August 7, 2008, Plaintiff filed a Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56(a).  (Docket Entry No. 40).

On August 28, 2008, Defendants filed its "Renewed Motion to Dismiss Or For Summary Judgment," pursuant to FED. R. CIV. P. 12(b)(1) and (6) and FED. R. CIV. P. 56.

B.    <u>Factual Background</u>:

It is undisputed that in May 2002, Plaintiff retained Defendants to represent him in his divorce action in Macomb County Circuit Court (Case No. 02-2660-DO)("the Divorce Action.").

3

<u>The Retainer Agreement And Other Legal Representation</u>:

On May 15, 2002, Plaintiff and Dawson, on behalf of Boyer & Dawson, executed a written contract titled, "RETAINER AGREEMENT - DOMESTIC RELATIONS"("the Retainer Agreement")(Ex. A to Def.'s Motion).  The Retainer Agreement provides, in pertinent part, as follows:

> The undersigned client does hereby retain the law firm of BOYER & DAWSON P.C. to represent him/her in a domestic relations action.
> It is agreed and understood that the attorney fees shall be charged at the rate of:
>
> <u>**$275.00**</u> per hour **David R. Dawson; <u>or</u>**
> <u>**$90.00**</u> per hour for any Legal Assistant fees,
>
> plus reimbursement by the client for actual costs expended on the client's behalf. It is further agreed that a charge of $25.00 per month for overhead expenses, including photocopying, FAX, telephone, mileage and postage on behalf of the client shall be assessed to the client's balance on account.
> The total fee determination will include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation and ability of the lawyer or lawyers performing the services.
> It is further agreed and understood that periodic billings may be submitted to the client, which are payable upon receipt.
> . . . .
> It is further agreed that the attorneys shall have a lien (including all real estate) on the client's proceeds of the action in the amount of the unpaid fees and costs. . .
> Representation of the client by the attorneys ends when the Judgment is filed and all necessary orders, including Qualified Domestic Relations Orders, have been entered and approved, and assets transferred, or a dismissal is filed.
> Any additional action, including post-judgment action for enforcement of property settlement, support, et cetera, shall be by separate retainer.
> . . . .
> This Agreement may not be modified except in writing signed by an

4

officer of the firm and by the client.
        The parties agreed that this agreement was entered into in the State of
Michigan and this agreement shall be construed and interpreted pursuant to the
Michigan laws. . .

(*Id*.)(emphasis in original).

        The above Retainer Agreement is the only written contract between the parties.

Nevertheless, it is undisputed that, in addition to representing Vergote in the divorce action,

Defendants also represented Vergote with respect to other matters.  (Def.'s Br. at 2).  These other

matters include: estate planning, refinancing transactions involving real estate, and litigation

involving several other matters.  (*See* Defs.' Answers to Interrogatories, attached as Ex. C to

Def.'s Resp. Br., at No. 1).   Defendants contend that the parties entered into "numerous oral

contracts whereby Vergote requested Dawson to perform legal services" for these other matters.

(*Id.* at No. 5).

        Defendants also contend that, while in Court on the first day of trial, "Plaintiff also

agreed to pay defendant one million dollars in the event a trial commenced on the divorce

action."  (*Id*.).  Plaintiff denies that he ever agreed to pay a one million dollar fee to Defendants.

(Pl.'s Dep. at 31-34).

        Invoices Received By Plaintiff:

        Plaintiff contends that after Defendants began representing him in the Divorce Action, he

began receiving invoices from Defendants that billed him on an hourly basis.  (*See* Ex. B to Pl.'s

Motion).  For example, Plaintiff received Invoice Number 7916 from Defendants on June 30,

2002, "[f]or professional services rendered through June 30, 2002."  (*Id*.).  That invoice included

dates on which services were provided, a description of the services provided, and the amount of

time spent on each service.  (*Id*.).  A similar itemized invoice was sent to Plaintiff on October 31,

5

2002.  (*Id.*).

Plaintiff was sent another invoice for "professional services rendered through February 29, 2004."  (*Id.*).  Plaintiff contends he received that invoice in January, before the Divorce Action was completed.  (Pl.'s Br. at 2).  While that invoice contained dates on which services were provided and a description of the services provided, unlike the prior invoices, the invoice did not contain the amount of time spent on each entry.  Without further explanation, the invoice also billed Plaintiff $1,001,695.60 for "Outstanding Accounts Receivable Balance." (*Id.*).

Plaintiff testified that after he received the above invoice, he called Defendants' office and asked about the one million dollar fee and a woman who answered the phone said "can't you take a joke." (Pl.'s Dep. at 31-32).  Plaintiff further testified that Dawson told him that the one million dollars reflected on his bill was a joke.  (Pl.'s Dep. at 32-33).

In any event, Plaintiff contends that he disputed and denied that Defendants were entitled to the one million dollar fee claimed by Defendants and Plaintiff did not pay the one million dollars after receiving the invoice.

Lien On The 45 Acres Property:

Plaintiff and his then wife owned approximately 45 acres in Chesterfield Township ("the 45 Acres Property").  Vergote and his then wife entered into a contract to sell the 45 Acres Property and Dawson was aware of that contract.  (Compl. at ¶¶ 27 & 28).

On May 17, 2005, Defendants recorded an attorney's lien on the 45 Acres Property.  (Ex. E to Pl.'s Motion).

The sale of the 45 Acres Property was scheduled for closing on April 6, 2006.  On April 5, 2006, Defendants sent a letter to the title company, copying Plaintiff's counsel, that stated:

6

> This will confirm that we have a lien in the amount of $1,278,976.14 against Leo Vergote's share of the real property scheduled for closing on April 6, 2006 in Commitment No. 50-513-064.  Please be advised that we have no problems with Greco Title holding the funds in your escrow account until all disputes in this matter are resolved.

(Ex. G to Pl.'s Motion).

On April 5, 2006, the parties appeared in Macomb County Circuit Court in the Divorce Case.  On that date, the parties discussed the lien on the 45 Acres Property.

Plaintiff asserts that "in order to ensure a closing on the sale of the [45 Acres Property] that was scheduled for the next day, Vergote and Defendants agreed that Defendants would release their liens in exchange for payment of $450,000 from the monies held in escrow by the title company."  (Pl.'s Br. at 2).  Plaintiff testified as follows:

> Q.    You said you allowed it, you agreed to pay him only to allow the sale to go through on that property?
> A.    That's right.

(Pl.'s Dep. at 63).  Plaintiff asserts that he never agreed to settle, release or waive any claims against Defendants.  (Pl.'s Reply Br. at 3-4).  Plaintiff asserts that "[e]ven Defendant Dawson did not claim in his deposition" that Plaintiff released Defendants from any claims against them. (*Id*.).

During his deposition, Dawson testified as follows regarding the discussions between the parties on April 5, 2006:

> Q.    Okay.  And then the sole reason why you were there was to resolve your outstanding fee issue in the lien, correct?
> A.    Correct.
> Q.    You were there for a couple hours that day?
> A.    Probably.
> Q.    Negotiations going back and forth?
> A.    Right.
> Q.    Let's work backwards.  First tell me what was agreed among the three of

7

| | you that day. |
|---|---|
| A. | I think you have the other letter. I don't remember the exact amount. I think it was 450 or 475 was what was agreed upon. |
| Q. | Okay. But tell me, I'll give you the number 450. I'll represent to you it's 450. Knowing that, tell me what the agreement was that you believe was reached that day. |
| A. | That he would pay, he, Leo Vergote, would pay $450,000. We release our lien; everybody goes their own separate ways and we're done. |
| Q. | Was that reduced to writing? |
| A. | I believe the only writing was my letter to Greco Title indicating that we had an agreement for $450,000 with a copy sent to Larry Scott and then, of course, the check being cut for 450. |
| . . . . | |
| Q. | This is another letter authored by you dated April 5, 2006 to Greco Title Company, correct? |
| A. | Right. |
| Q. | And in summary you would be paid $450,000 from Mr. Vergote's share of the proceeds and then you would release the lien? |
| A. | Correct. |

(Dawson Dep. at 47-50). Defendants also submitted the following interrogatory response during

discovery:

> 3.   Please describe in detail, with references to any and all supporting documents, the factual bases for the accord and satisfaction affirmative defense that Defendants have asserted.
>
> ANSWER:   Leo Vergote, his counsel, Larry Scott and David Dawson met at the Macomb County Circuit Court House in a conference on approximately April 5, 2006 to settle the matter of Dawson Lien on Vergote's property. Parties reached an agreement for settlement whereby Vergote would pay to Dawson out of the sale proceeds of the property $450,000. Upon receipt, Dawson would release the lien on Vergote's property. The only documents are: the release of lien prepared by Dawson and dropped off at Greco Title at which time he received a check for $450,000 and Exhibit B to the Answer to the Complaint, a letter to Greco Title confirming a settlement of the lien amount.

(Ex. C to Pl.'s Motion).

On April 6, 2007, an "Order of Proceeds From Sale of 45 Acres" was issued in the

8

Divorce Action that stated:

> IT IS ORDERED:
>
> AT THE CLOSING OF THE 45 ACRE PARCEL, GRECO TITLE OR ANY
> OTHER PARTY CONDUCTING THE CLOSING SHALL DISBURSE THE
> SELLERS' PROCEEDS AS FOLLOWS:
> 1.  PAY ALL USUAL EXPENSES OF SALE INCLUDING REAL ESTATE
> COMMISSIONS, WITH NET PROCEEDS REMAINING DIVIDED ½ FOR
> PLAINTIFF'S PORTION AND ½ FOR DEFENDANT'S PORTION.
> 2.  FROM EACH PARTY'S PORTION THE SUM OF $500,000 EACH
> ($1,000,000 TOTAL) SHALL BE ESCROWED WITH GRECO TITLE CO IN
> AN INTEREST BEARING ACCOUNT.  THESE PROCEEDS SHALL ONLY
> BE DISBURSED ON THE STIPULATION OF THE PARTIES OR BY ORDER
> OF THE COURT.
> 3.  **FROM DEFENDANT'S ½ PORTION PAY** RICH BRACCI LIEN (approx.
> $150,000), **DAVID DAWSON ATTORNEY FEE LIEN**, AND STATE OF
> MICHIGAN LIEN ON TITLE COMMITMENT (approx. $21,000).

(Ex. H to Pl.'s Motion)(emphasis added).  Counsel for Plaintiff approved the order as to form

and substance.  (*Id.*).

It is undisputed that on April 6, 2007, the closing on the 45 Acres Parcel proceeded and

the property was sold by Plaintiff and his then wife.

On May 8, 2007, Dawson recorded a release of his attorney's lien on the 45 Acres

Property.  (Ex. K to Pl.'s Motion).

Plaintiff filed this action on October 3, 2007.

ANALYSIS

A.     Does This Court Have Subject Matter Jurisdiction Over This Action?

In their motion, Defendants again raise the issue of whether this Court has subject matter

jurisdiction over this action.  Defendants contend that this court lacks subject matter jurisdiction

9

because diversity of citizenship did not exist when this case was filed.  Defendants contend that Plaintiff was a Michigan citizen when he filed this action, and therefore, complete diversity does not exist because Defendants are also Michigan citizens.  Defendants assert that Plaintiff's late-filed affidavit is insufficient to negate what it calls "overwhelming evidence that plaintiff continues to be a Michigan citizen."  (Def.'s Br. at 5).

As explained below, the Court rejects Defendant's request to dismiss this action on jurisdictional grounds.

28 U.S.C. § 1332 provides that this court has original jurisdiction over civil actions where the dispute is between citizens of different states and the amount in controversy exceeds $75,000.  The court has jurisdiction if diversity of citizenship existed at the time the complaint was filed.  *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967).  In this case, the issue is whether Plaintiff was a citizen of Missouri when he filed the Complaint in this action on October 3, 2007.

"State citizenship for the purpose of the diversity requirement is equated with domicile." *Von Duser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).  "A person's previous domicile is not lost until a new one is acquired."  *Id.*  "Establishment of a new domicile is determined by two factors:  residence in the new domicile, and the intention to remain there."  *Id.*  The burden of proving domicile rests with the party invoking the court's jurisdiction.  *Persinger v. Extendicare Health Services, Inc.*, 539 F.Supp.2d 995, 996 (S.D.Ohio 2008)(quoting *Kaiser v. Loomis*, 391 F.2d 1007, 1010 (6th Cir. 1968)).

The evidence before the Court relating to Plaintiff's citizenship includes the following:

•       A corporate filing for Vergote Drive L.L.C., filed on April 11, 2002, listed Plaintiff as the entity's "resident agent" at the following address: 31960 Little Mack Roseville, MI

10

48066.  (Docket Entry No. 27-16).  The documents submitted further indicate that, as of "2-15-05" the entity's status was "active, but not in good standing."  (*Id.*);

• Plaintiff's affidavit, wherein he states that "since prior to October 3, 2007, I have resided in the State of Missouri and, specifically, at 1710 N. Gregory Drive, Nixa, MO 65714." (Pl.'s Afft. at ¶ 2);

• Plaintiff's Interrogatory Answer stating that he lives at the N. Gregory address and that he bought that residence in June, 2004, and also owns two other residences in Missouri: "(1) 1332 Lindberg, Springfield, MO 65807 (bought in May, 2006); and (2) 1113 Whiteside, Springfield, MO 65807 bought in May, 2006 and sold on a land contract." (Ex. J to Defs.' Motion, at 1-2);

• Plaintiff's Interrogatory Answer stating that he owns the following business in Missouri: L&V, LLC, d/b/a Flagg Auto Used Car lot in Springfield, MO."  (*Id.*);

• Plaintiffs' Interrogatory Answer stating that he is not registered to vote in any state. (*Id.*);

• Plaintiff's Interrogatory Answer stating that he has a Michigan drivers license and a Missouri non-drivers license.  (*Id.*);

• Plaintiff's January 17, 2008 Interrogatory Answer stating that "[f]or the last two years, [he] has spent over 90% of his time in Missouri.  For the period three to five years ago, Plaintiff spent over 75% of his time in Missouri.  The remainder of this time has been spent in Michigan."  (*Id.* at 3);

As noted in this Court's prior Opinion & Order, Plaintiff's submissions clearly reflect that he has a residence in Missouri.  The question that remains is whether, in October 2007, he intended to remain in Missouri, thereby changing his domicile to Missouri.

Plaintiff's affidavit, which states that "[s]ince prior to October 3, 2007, I have intended to remain in Missouri and keep my principal residence in that state"  (Pl.'s Aff. at ¶ 3), answers that question.  In raising this issue again in its Motion for Summary Judgment, Defendant has failed to present any evidence which persuades this Court to alter its conclusion that Plaintiff intended to remain in Missouri indefinitely.

11

Accordingly, the Court finds by a preponderance of the evidence[1] that Plaintiff's domicile was in Missouri on the date that the complaint in this action was filed. Diversity of citizenship was therefore present and this Court properly maintains subject matter jurisdiction over this action.

B.   Is Either Party Entitled To Dismissal/Summary Judgment With Respect To Plaintiff's Breach Of Contract Claim (Count I)?

In their respective motions, each of the parties assert that they are entitled to dismissal and/or summary judgment in their favor with respect to Plaintiff's breach of contract claim.

1.   Should The Court Dismiss Count I On The Ground That Plaintiff Has Failed To Allege A Viable Breach Of Contract Claim?

Defendants contend that, under Michigan law, "there is no breach of contract cause of action under which a client who believes he had paid too much can recover the legal fees he paid." (Def.'s Resp. Br. at 4). Defendants states that "[h]ere, there is absolutely no allegation that defendants did not perform under their retainer agreement with plaintiff. To the contrary, defendants performed the legal services they agreed to perform and more. Here, plaintiff is essentially claiming that he paid too much for defendants' services, and that he ought to get some of his money back." (*Id*.). Defendants claim that the Michigan Court of Appeals "squarely rejected a nearly identical claim" in *Lusader v. Law Firm of John F. Schaefer, P.L.L.C.*, an unpublished opinion attached to Defendants' Response as Exhibit J.

Defendants claim that "[o]nly the firm's failure to perform the agreed-upon legal services

---

[1]The party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence. *Stacey v. ZF Lemforder*, 2007 WL 439045 (E.D. Mich. 2007)(citing *Garza v. Bettcher Indus., Inc.*, 752 F.Supp. 753, 760 (E.D. Mich. 1990); *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)).

would give rise to a breach of contract cause of action."  (Defs.' Resp. Br. at 6).

Plaintiff takes the position that while the Michigan Rules of Professional Conduct support his breach of contract claim, they are not the basis of his claim.  (Pl.'s Resp. Br. at 7). Plaintiff contends that *Lusader* can be distinguished from this case.  Plaintiff states that, unlike this case, the plaintiff in *Lusader* did not allege a breach of any of defendant's contractual obligations.

Having considered the parties' respective positions, the Court shall deny Defendants' request to dismiss this claim on the ground that Plaintiff has failed to allege a viable breach of contract claim.

As Plaintiff's submissions make clear, Plaintiff's breach of contract claim is *not* based on a violation of the Michigan Rules of Professional Conduct.  Thus, the Court agrees that *Lusader* can be distinguished.  In that case, the parties had entered into an express written agreement that included a provision for the payment of a $50,000, non-refundable engagement fee. Subsequently, plaintiff discharged her counsel, and sought the return of her engagement fee.  The plaintiff brought suit alleging a violation the MRPC and alleging breach of contract.  The court dismissed both claims.  It dismissed the claim based on violation of the MRPC because if failed to state a cognizable claim.  *Lusader, supra*, at 1.  It dismissed the breach of contract claim because that claim was based on an alleged violation of the MRPC and because her complaint did not allege that defendant failed to perform any of its contractual obligations.  Here, in contrast, Plaintiff asserts that Defendants agreed, in the written Retainer Agreement, to charge him a set hourly rate for legal services, and breached that contractual provision by charging him fees in excess of the agreed upon rates for those legal services.

13

Neither party has presented a case that squarely deals with the somewhat unusual circumstances presented by this breach of contract case. The Court therefore concludes that Defendants have not established that they are entitled to summary judgment on this claim.

   2.   Are Defendants Entitled To Summary Judgment On The Ground That There Was An Accord And Satisfaction?

Next, Defendants contend that "[b]y agreeing that the payment of $450,000 would satisfy the outstanding attorney fees, the parties reached an accord and satisfaction that bars any contract claim plaintiff may have." (Def.'s Resp. Br. at 10). Defendants claim an accord and satisfaction exists under *Hoerstman Gen. Contracting, Inc. v. Hahn*, 474 Mich. 66 (2006).

In response, Plaintiff states that after Defendants asserted their attorney's liens, seeking to have the title company escrow the full amount of the lien asserted by Defendants (Exhibit G to Pl.'s Br.), the parties only agreed that: 1) Defendants would receive $450,000 out of the sale proceeds; and 2) the lien would be discharged. Plaintiff asserts that Defendants did not bargain for, or obtain, any waiver by Vergote of his claims against Defendants. Plaintiff states that "[e]ven Defendant Dawson did not claim in his deposition that Vergote released Defendants from any claims arising out of the improper lien." (Pl.'s Resp. Br. at 12). Plaintiff asserts it therefore was not a full and final settlement and there is no accord and satisfaction.

Plaintiff also asserts that Defendants cannot establish the essential elements of an accord and satisfaction because Defendants are essentially attempting to apply the accord and satisfaction in reverse. (*See* Pl.'s Resp. Br. at 11).

The Court concludes that Defendants have not established that they are entitled to summary judgment on the issue of whether there was an accord and satisfaction.

First, it is unclear whether Defendants can assert the affirmative defense of assert accord

14

and satisfaction under the facts of this case.

"An accord and satisfaction is an affirmative defense grounded in contract principles." *Hoerstman Gen. Contracting, Inc., supra*, at 70. "An 'accord' is an agreement between parties to give and accept, in settlement between parties to give and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and 'satisfaction' is the performance or execution of the new agreement." *Faith Reformed Church of Traverse City, Michigan v. Thompson,* 248 Mich.App. 487, 491-92 (2002). "To prove the existence of an accord and satisfaction, a defendant must show (1) *its* good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) *its conditional tender of money in satisfaction of the claim*, and 4) the plaintiff's acceptance of the tender (5) while fully informed of the condition." *Id.* (emphasis added).

Here, Defendants did not make any tender to Plaintiff to resolve an unliquidated claim of Plaintiff. Rather, Plaintiff disputed a claim to attorney's fees asserted by Defendants. Moreover, Plaintiff did not make a tender to Defendants. Rather, Defendant received a check from the title company. In other words, the facts of this case do not appear to fit with the traditional application of the affirmative defense of accord and satisfaction. Defendants, who seek summary judgment on this issue, have not cited any authority to establish that it can be applied under the circumstances of this case.

Moreover, assuming *arguendo* that Defendants can assert the affirmative defense of accord and satisfaction in this case, the Court would conclude that an issue of facts exists, precluding summary judgment on the issue. "An accord is a contract that requires a meeting of the minds of those who enter into it." *Hoerstman Gen. Contracting, Inc, supra*; *see also* 1 MICH.

15

CIV. JUR. *Accord and Satisfaction* § 2 ("The parties must intend an accord and satisfaction.  It is rudimentary that an accord requires the plaintiff to be aware that the defendant intends the tender of payment to effect a full settlement and satisfaction of the plaintiff's claims").  Construing the evidence in a light most favorable to Plaintiff, *if* the defense can be asserted in this case, the Court concludes that there would be an issue of fact as to whether the parties intended the release of the $450,000 from the settlement proceeds to be a full settlement of Plaintiff's claims against Defendant.

  3. <u>Is Plaintiff Entitled To Summary Judgment On The Breach Of Contract Claim</u>?

  In his motion, Plaintiff contends that he is entitled to summary judgment on this claim, stating:

> Vergote contends that the Contract limits Defendants to hourly fees.  Defendants contend that, in addition to the hourly fees provided for in the Contract, the Contract also allows Defendants to charge Vergote an additional, unspecified "value added" fee.  Under Vergote's interpretation, any attempt by Defendants to charge a fee in addition to hourly charges, whether reasonable or not, is a breach of the Contract.  This breach was a direct cause of the additional $450,000 paid to Defendants by Vergote, and Vergote is entitled to a judgment against Defendants in that amount.

(Pl.'s Br. at 5).

  A contract is ambiguous when its provisions may reasonably be interpreted in more than one way, or if two provisions irreconcilably conflict with each other.  *Klapp v. United Ins. Group Agency, Inc*., 468 Mich. 459, 467 (2003).

  Here, the Retainer Agreement states that "[i]t is agreed an understood that the attorney fees shall be charged at the rate of" $250 per hour for Dawson or $90 per hour for his paralegal. (Retainer Agreement at 1).  Notwithstanding that language, the Retainer Agreement then states that "[t]he total fee determination will include" several factors.  (*Id*.).  The Court concludes that

16

those provisions may reasonably be interpreted in more than one way and/or that they irreconcilably conflict with each other.  The Court therefore finds that the contract language is ambiguous and summary judgment cannot be granted in Plaintiff's favor on the breach of contract claim.

        4.    <u>Are Defendants Entitled To Summary Judgment On The Breach Of Contract Claim</u>?

Defendants also assert that, assuming Plaintiff can proceed with its contract claim, Defendant is still entitled to summary judgment because the fee that Plaintiff paid was "reasonable."  The Court concludes that any question as to the reasonableness of attorney fees charged would be an issue of fact.  Defendants' own brief appears to concede as much:

> Plaintiff is not entitled to summary judgment because, at a minimum, there is a question of fact about whether the charged attorney fees were reasonable, and whether plaintiff agreed to pay the fees that he now seeks to recover.

(Def.'s Resp. Br. at 9).

C.    <u>Is Either Party Entitled To Summary Judgment With Respect To Plaintiff's Unjust Enrichment Claim (Count II)</u>:

In Count II, Plaintiff asserts an unjust enrichment claim.  Both parties seek summary judgment in their favor with respect to this claim.

Plaintiff contends that he is entitled to summary judgment on this claim because the evidence establishes that Defendants were unjustly enriched by their receipt of the $450,000.  Whether a specific party has been unjustly enriched, however, is generally a question of fact. *Iverson Industries, Inc. v. Metal Management Ohio, Inc*., 525 F.Supp.2d 911, 921-22 (E.D. Mich. 2007)(citing *Morris Pumps v. Centerline Piping, Inc*., 273 Mich.App. 187 (2006)).

Defendants contend that Plaintiff cannot pursue an unjust enrichment claim because there

17

is an express written contract between the parties.

It is true that there is no claim for unjust enrichment when there exists a valid contract covering the *same subject matter*. *Morris, supra* at 195.  Here, however, the Retainer Agreement expressly states that it only covers the Divorce Action.  Dawson testified that the million dollar fee he charged Plaintiff, that comprised the bulk of the attorney fee lien he placed on the 45 Acres Property, that ultimately resulted in Defendants obtaining the $450,000 at issue, was based upon work on numerous legal matters that Defendant performed for Plaintiff and that there were no written agreements for those other matters.  (*See e.g.*, Dawson's Dep. at 53-56).  Thus, the Court concludes that the existence of the Retainer Agreement does not bar Plaintiff's unjust enrichment claim.

D.    Is Either Party Entitled To Summary Judgment With Respect To Plaintiff's Tortious Interference With Contractual Relationships (Count III)?

In Count III, Plaintiff asserts a claim for "tortious interference with contractual relationships."  Plaintiff alleges that when he refused to pay Defendants the million dollar fee billed for the Divorce Action, Defendants recorded an attorney's lien on the 45 Acres Property, knowing that Plaintiff was a party to a contract to sell that property.  (Compl. at ¶¶ 13-14 & 28-29).  He alleges that Defendants refused to discharge the lien in order to allow him to close on the sale.  (*Id*. at ¶ 15).  Plaintiff alleges that Defendants improperly interfered with his "ability to close on the sale" of the 45 Acres Property.  (*Id*. at 30). Plaintiff contends that, but for the attorney's lien recorded by Dawson, Plaintiff would not have paid an additional $450,000.00 to Defendants.

Under Michigan law, the elements of a prima facie case of tortious interference with contractual relations are: 1) the existence of a contract; 2) *the breach of that contract*; and 3)

18

defendant's having instigated that breach without legal justification.  *Baum Research and Dev. Co. v. Hillerich & Bradsby Co., Inc*., 31 F.Supp.2d 1016, 1024 (E.D. Mich. 1998)(emphasis added); *Mahrle v. Danke*, 216 Mich.App. 343 (1996); 24 MICH.CIV. JUR. TORTS § 26.

Defendants contend that this claim must be dismissed because there is no dispute that there was no breach of the contract between Plaintiff and the purchaser of the 45 Acres Property. (Defs.' Resp. Br. at 11).  Defendants note that Plaintiff acknowledges that "Defendants' recording of the attorney's liens did not prevent a closing on the sale" of the 45 Acres Property. (Pl.'s Br. at 11).

In responding to the ground for relief, Plaintiff does not address the failure to establish a breach of the underlying purchase agreement.  Rather, Plaintiff discusses elements relating to a claim for tortious interference with a prospective business relationship – an entirely different claim, which Plaintiff has not asserted in this action.

The Court agrees that this claim must be dismissed because Plaintiff cannot establish a breach of the underlying purchase agreement.  The Court shall therefore grant summary judgment in favor of Defendants with respect to Count III.

<u>CONCLUSION & ORDER</u>

For the reasons above, IT IS ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss/Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED with respect to Count III of Plaintiff's complaint and that count is dismissed with prejudice.  The motion is DENIED in all other respects.

19

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 13, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 13, 2009, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager